UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MACROTREND CAPITAL GROUP INC.;
INNOVITAE HOLDINGS INC.; KEVIN
GLUCKSTAL; GREGORY LUSTIG; and
RICK JORDAN,

        Plaintiffs,                           CASE NO.: 18-61327-CIV-DIMITROULEAS

v.

ALAN EDWARDS,

        Defendant.
_____/

**PLAINTIFFS' VERIFIED FIRST AMENDED COMPLAINT
AND APPLICATION FOR INJUNCTIVE RELIEF**

Plaintiffs, MacroTrend Capital Group Inc. ("MacroTrend"); Innovitae Holdings Inc. ("Innovitae"); Kevin Gluckstal ("Gluckstal"); Gregory Lustig ("Lustig"); and Rick Jordan ("Jordan") (collectively, "Plaintiffs"), file this First Amended Verified Complaint and Application for Injunctive Relief against Defendant Alan Edwards ("Defendant"). This Amended Verified Complaint and Application for Injunctive Relief is verified by the Affidavits of Rick Jordan, attached hereto as Composite **Exhibit "A"**.

**INTRODUCTION**

1. After his employment was terminated for cause, Defendant engaged in a campaign to defame Plaintiffs, interfere with their business relationships, and harm their goodwill, among other things in the State of Florida where Plaintiffs were operating. Defendant stole Plaintiffs' customer lists, referral lists, and other contact information and sent mass emails intended to destroy Plaintiffs' businesses and reputation. Defendant also posted a number of lies on various blogs and forums aimed at Florida and at Florida companies and residents with which Plaintiffs conducted business, with an intent to destroy Plaintiffs' businesses and reputation. Defendant has committed

not only defamation, but misappropriation of trade secrets and confidential information, conversion, breach of contract, breach of fiduciary duty, and tortious interference. As a result, Plaintiffs have sustained and continue to sustain irreparable harm, including but not limited to loss of goodwill, for which the Court should issue a temporary injunction to preserve the status quo. Additionally, Plaintiffs have suffered substantial damages, and the Court should award Plaintiffs any of their damages that are capable of being ascertained.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff MacroTrend is a Florida corporation with its principal place of business at 10101 West Sample Road, Suite 425, Coral Springs, Florida 33065. Among other things, MacroTrend represents institutional assets and sovereign families and invests in forward thinking economic-development projects that embrace disruptive technologies and make a difference in society.

3. Plaintiff Innovitae is a Florida corporation with its principal place of business at 10101 West Sample Road, Suite 425, Coral Springs, Florida 33065. MacroTrend formed Innovitae to make investments in and acquisitions of life science companies.

4. Plaintiff Gluckstal is a Florida resident. Gluckstal is the Founder, Chief Executive Officer, and Chief Investment Officer of MacroTrend.

5. Plaintiff Lustig is a Florida resident. Lustig is the Executive Chairman and General Counsel of MacroTrend.

6. Plaintiff Jordan is an Ohio resident. Jordan is the President of MacroTrend.

7. Defendant is a Michigan resident.

8. The Court has personal jurisdiction over Defendant because he has sufficient minimum contacts with Florida.

9. Defendant is subject to specific jurisdiction because he either engaged in tortious activities in Florida or directed them to Florida, or both. He misappropriated and converted trade secrets and confidential information located in Florida; breached a Florida contract in Florida; breached his fiduciary duties in Florida; made defamatory statements directed to Florida at Florida residents; tortiously interfered with Florida contracts and Florida business relationships, and Plaintiffs suffered damages in Florida.

10. Defendant is also subject to general jurisdiction in Florida. His contacts were such that he called Florida home for jurisdictional purposes. As a condition of his employment with Innovitae, Defendant agreed that he would move to Florida. Defendant opened a Florida bank account at Regions Bank in Florida, where his compensation was deposited. He also traveled to Florida at least once a month to conduct business, and all official company meetings took place in Florida. Moreover, all final due diligence for deals was conducted in Florida, and Defendant participated in this due diligence in Florida.

11. The Court has subject matter jurisdiction over this dispute because the amount in controversy exceeds the Court's minimum jurisdictional requirements and because Plaintiffs seek injunctive relief.

12. Venue is proper in Broward County, Florida because that is where the cause of action accrued.

## FACTS

**A.  Innovitae hired Defendant as its CEO to invest in life science companies.**

13. MacroTrend formed Innovitae to make investments in and acquisitions of life science companies. On February 24, 2017, Innovitae hired Defendant as its CEO. *See generally* Innovitae Employment Agreement, attached hereto as **Exhibit "B"**. The Employment Agreement is governed by Florida law.

14. In furtherance of his employment, Defendant traveled to Florida at least once a month to conduct business. Defendant also traveled to Florida to assist Plaintiffs conduct due diligence for deals in Florida. As a condition of his employment with Innovitae, Defendant agreed that he would move to Florida and had even opened a Florida bank account at Regions Bank in Florida, where his compensation was deposited.

15. Defendant's employment agreement contains a number of provisions designed to protect Innovitae and its trade secrets and confidential information. Plaintiffs maintained the trade secrets and confidential information pertaining to their business in Florida.

16. In relevant part, the employment agreement contains a confidentiality agreement whereby Defendant agreed to never disclose any confidential information regarding Innovitae or any of its clients, partners, or affiliates, including but not limited to MacroTrend. *Id.* at § 8. Defendant also agreed that if this confidentiality agreement was ever breached, Innovitae would be irreparably harmed and entitled to an injunction. *Id.* at § 10M.

**B.   After being suspended and terminated for cause, Defendant engaged in a campaign intended to harm Plaintiffs.**

17. After repeatedly failing to comply with orders, instructions, requirements, guidelines, and policies, Defendant was first suspended and then terminated for cause. In retaliation, Defendant commenced a campaign to defame Plaintiffs, interfere with their business relationships, and otherwise harm Plaintiffs.

18. Defendant stole Plaintiffs' customer lists, referral lists, and other contact information that Plaintiffs maintained in Florida. Defendant also sent mass emails aimed at Florida and at Florida companies and residents intending to destroy Plaintiffs' businesses and reputation in Florida and to interfere with the contracts and business relations that Plaintiffs had in Florida. While Defendant used a pseudonym to attempt to mask his identity, he is the only one that had

access to these lists and has the motivation to retaliate against Plaintiffs. One such email appears below:

> From: "dolanmedia1@aol.com" <dolanmedia1@aol.com>
> Date: March 30, 2018 at 5:59:51 AM EDT
> To: Greg Lustig <greg@macrotrendcapital.com>
> Subject: Fw: macrotrend - whistleblower
>
> Sent from my Verizon LG Smartphone
>
> ------ Original message------
> From: richard gozinia
> Date: Fri, Mar 30, 2018 12:50 AM
> To: dolanmedia1@aol.com;
> Cc:
> Subject: macrotrend - whistleblower
>
> Mr Dolan - You were listed as a reference for this firm and its partners.
>
> There is clear evidence that this firm and its members make false representations, utilized forged documents, committed securities violations, and actively sought to mislead reputable businesses. It is also clear that one of their businesses: Aladin Capital - has been shown publicly to be a fraudulent Ponzi Scheme.
>
> When senior executives uncovered the scam they were threatened and fired.
>
> You can read all about this freely now because it has all been uncovered and is in the public domain. read below.
>
> The SEC, FTC, and US Treasury have all been notified as to the extent of Macrotrend's activities. Lawyers are now on the case.
>
> Richard Gozinia
>
> https://www.ripoffreport.com/reports/greg-lustig-kevin-gluckstal-rick-jordan/boca-raton-florida-33065/greg-lustig-kevin-gluckstal-rick-jordan-macrotrend-capital-aladin-capital-whistleb-1428204

*Continued on next page…*

> **Greg Lustig, Kevin Gluckstal, and Rick Jordan** are main actors in this whole ruse & honest executives who have uncovered the scheme as whistleblowers have faced threats and have been fired without cause.
>
> MacroTrend (and Aladin Capital) is investment group and seeks out legitimate businesses in the US and elsewhere saying that they can offer financing and offer investment advise. They con through use of altered documents to show proof and sources of funds. They enter into funding agreements without any capacity to fulfill their commitments. they use altered documents and through numerous other fake reps, they dupe companies into believing them to complete due diligence docs. then they use these "investment documents" as part of scam to claim that they have legitimate businesses and assets in the US.
>
> They charge fees and never fulfill. they con legitimate businessmen into working with them and never pay them anything - and whistleblowers are fired or quit. and they threaten people who confront them.
>
> They breach number of laws in USA and others and operate a fake operation with fake addresses in Florida where they can hide from bankruptcy. They do not honor contracts or commitments. They also appear to disobey a number of laws including securities laws.
> part of scam is to use these "investment documents" and fees from the US to further support some form of a crypto currency scam in Asia and Europe. this is aladin coin scam and is very visible below. They use same fake addresses and fake documents and are owned by same people. Some of the of the documents they use also may be involved with some kind of scheme to circumvent money laundering laws in the US and UK.
>
> Read all about it:
> 1) Wall Street Oasis - IS this boutique firm a scam? https://www.wallstreetoasis.com/forums/is-this-boutique-firm-a-scam-or-legit
> "Macrotrend is a total scam. They claim a readiness to fund with $1B HSBC backing. Sounds great but document has been forged. Search "mlm aladincoin" and you will see it there. Aladincoin is a ethereum based cryptocurrency issued bt Aladin Capital llc which is a subsidiary of MacroTrend Capital. Similar team members. Stay away from Greg Lustig and Kevin Gluckstal."
> 2) MLM Website - Aladin Coin Review - http://behindmlm.com/mlm-reviews/aladincoin-review-aic-ponzi-points-scheme/#comment-395369
> "Some key team members as management. MacroTrend is ruse telling companies seeking funding they have sovereign fund under their management. They claim they can fund through the Swiss Aladin Trust which is a subsidiary of MacroTrend. Aladin Capital is also a subsidiary. MacroTrend charges fees to companies they have entered into agreements under LOI's and IA's for due diligence ($25k, $35k), fees for legal costs pre-closing at $35k and 2% of total closing transaction which must be deposited prior to close in escrow for the company to be funded."
> "MacroTrend never funds. They collect fees and keep delaying. Greg Lustig and Kevin Gluckstal are the two owners of MacroTrend Capital Group. Agreements are poorly written and require significant investment by companies and time wasted as closing dates are set and missed."
> "Aladincoin recently was launched by Aladin Capital Europe in Austria. There is clearly evidence of fraud and false claims."
> "In reality AIC is backed solely by new affiliate investment, despite AladinCoin's representation that it's "back up by financial institutes and hedge funds". AladinCoin use newly invested funds to pay recruitment commissions and bonuses, as well as AIC ROI withdrawal requests. Presumably AIC ROI withdrawals are handled through an internal exchange as AIC is not publicly tradeable. In any event, using newly invested funds to pay existing affiliates a ROI makes AladinCoin a Ponzi scheme."
> "Being a Florida corporation, AladinCoin through Aladin Capital LLC are required to register their investment opportunity with the SEC. A search of the SEC's Edgar database reveals neither AladinCoin, Aladin Capital LLC or Kevin Gluckstal are registered to offer securities in the US. This means AladinCoin is operating illegally. All the more comical considering Gluckstal's claim to have "extensive knowledge" of "securities and finance". Call my cynical but it appears the sole purpose of AladinCoin and AIC is to screw as many gullible Vietnamese investors out of as much money as possible."
> 3) BitCoin Forum Review - Too Many Scams Impacting Bitcoin - Aladin Coin Review
> - https://bitcointalk.org/index.php?topic=2909424.0
> "Its a complete scam. Kevin Gluckstal and Greg Lustig of both Aladin Capital LLC and MacroTrend Capital LLC are connected to this. MacroTrend collects fees from companies needing investment upon signing LOI's and IA's. Only they never fund. Haven't done one deal. Another attached scam to Aladincoin. Stay clear."
> https://www.facebook.com/Aladin-Capital-Team-Viet-Nam-442600602742976/
> http://www.macrotrendcapital.com/
> https://aladincapital.com/about-us/
> "......again we see use of fake documents, fake offices, fraudulent statements by executives. Fake HSBC bank guarantee everywhere."

19. Defendant also posted a number of lies on various blogs and forums with an intent to destroy Plaintiffs' businesses and reputation in Florida. These blogs and forums include, but are not limited to, Ripoff Report, Wall Street Oasis, Investors Hub, Behind MLM, Bitcoin Forum,

Reddit, ICOExaminer, YScam, ReportScam.com, and Bitcoin Exchange Guide. The email above contains much of the same lies contained in these blogs and forums.

20. All conditions precedent to Plaintiffs' recovery and the claims made the subject of this suit have been performed or have occurred.

21. Plaintiffs have retained the law firm of Byrd Campbell P.A., agreeing to pay its reasonable attorney's fees.

## CAUSES OF ACTION

### COUNT I
### Misappropriation of Trade Secrets and Confidential Information

22. Plaintiffs sue Defendant for damages that exceed $75,000.00 for misappropriation of Plaintiffs' trade secrets and confidential information.

23. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

24. During his employment, Defendant had access to Plaintiffs' trade secrets and confidential information that were maintained by Plaintiffs in Florida, including but not limited to customer lists, referral lists, and other contact information.

25. Defendant agreed to keep these trade secrets and confidential information confidential. Despite this agreement and other obligations under the law, Defendant misappropriated them to defame Plaintiffs and tortiously interfere with their contracts and business relationships in Florida.

26. Plaintiffs and their businesses in Florida were damaged as a result of Defendant's acquisition and use of the trade secrets and confidential information.

WHEREFORE, Plaintiffs demand a judgment against Defendant for damages and other relief, including but not limited to exemplary damages, costs, attorneys' fees and punitive damages upon proper proffer.

## COUNT II
### Conversion

27. Plaintiffs sue Defendant for damages that exceed $75,000.00 for conversion of Plaintiffs' trade secrets and confidential information.

28. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

29. During his employment, Defendant had access to Plaintiffs' trade secrets and confidential information that were maintained by Plaintiffs in Florida, including but not limited to customer lists, referral lists, and other contact information.

30. Defendant agreed to keep these trade secrets and confidential information confidential. Despite this agreement and other obligations under the law, Defendant converted them to his own use to defame Plaintiffs and tortiously interfere with their contracts and business relationships in Florida.

31. Plaintiffs and their businesses in Florida were damaged as a result of Defendant's acquisition and use of the trade secrets and confidential information.

WHEREFORE, Plaintiffs demand a judgment against Defendant for damages and other relief, including but not limited to exemplary damages, costs, attorneys' fees and punitive damages upon proper proffer.

## COUNT III
### Breach of Contract

32. Plaintiffs sue Defendant for damages that exceed $75,000.00 for breach of contract.

33. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

34. On February 24, 2017, Plaintiff Innovitae hired Defendant as its CEO under an Employment Agreement, attached hereto as Exhibit "B". The Employment Agreement is governed by Florida law.

35. Defendant's employment agreement contains a number of provisions designed to protect Plaintiffs and their trade secrets and confidential information that were maintained by Plaintiffs in Florida.

36. During his employment, Defendant obtained Plaintiffs' trade secrets and confidential information, including but not limited to customer lists, referral lists, and other contact information.

37. Defendant agreed in his Employment Agreement to keep these trade secrets and confidential information confidential. Despite this agreement and other obligations under the law, Defendant used them to defame Plaintiffs and tortious interfere with their contracts and business relationships in Florida.

38. Defendant breached the Florida contract within this State.

39. Plaintiffs have suffered harm as a direct result of Defendant's breaches of contract.

WHEREFORE, Plaintiffs demand a judgment against Defendant for damages and other relief, including but not limited to exemplary damages, costs, attorneys' fees and punitive damages upon proper proffer.

## COUNT IV
### Breach of Fiduciary Duty

40. Plaintiffs sue Defendant for damages that exceed $75,000.00 for breach of fiduciary duty.

41. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

42. Plaintiffs entrusted Defendant with their trade secrets and confidential information during his employment, and reposed trust and confidence in Defendant, creating a confidential employment relationship.

43. Defendant undertook Plaintiffs' trust and confidence and assumed the duty to protect Plaintiffs. Defendant owed an ongoing duty of confidentiality requiring him to maintain the confidentiality of the information and to refrain from using the information.

44. Defendant has breached these duties to Plaintiffs within the State of Florida.

45. These violations have caused damages and irreparable harm and, unless enjoined, will likely cause further damages and harm that are both imminent and irreparable.

WHEREFORE, Plaintiffs demand a judgment against Defendant for damages and other relief, including but not limited to exemplary damages, costs, attorneys' fees and punitive damages upon proper proffer.

## COUNT V
### Defamation

46. Plaintiffs sue Defendant for damages that exceed $75,000.00 for defamation.

47. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

48. Defendant intentionally or negligently published false and defamatory statements directed into the State of Florida and to Florida residents about Plaintiffs to third parties, which are not privileged.

49. Many of these statements were in writing, constituting libel.

50. These statements are actionable per se because they accuse Plaintiffs of committing crimes; subject Plaintiffs to distrust and disgrace; and injure Plaintiffs and their businesses in their trade and profession within the State of Florida.

51. Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand a judgment against Defendant for damages and other relief, including but not limited to exemplary damages, costs, attorneys' fees and punitive damages upon proper proffer.

### COUNT VI
### Tortious Interference

52. Plaintiffs sue Defendant for damages that exceed $75,000.00 for tortious interference with Plaintiffs' business relationships.

53. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

54. Plaintiffs maintain business relationships with various Florida customers of which Defendant was aware.

55. Defendant engaged in a campaign to intentionally and unjustifiably interfere with Plaintiffs' Florida contracts and business relationships to injure Plaintiffs.

56. This campaign resulted in Plaintiffs losing contracts with customers and ongoing business relationships in Florida.

57. As a result, Plaintiffs suffered damages and substantial injury in Florida that Defendant knew would be felt in Florida, including but not limited to loss of goodwill.

WHEREFORE, Plaintiffs demand a judgment against Defendant for damages and other relief, including but not limited to exemplary damages, costs, attorneys' fees and punitive damages upon proper proffer.

## COUNT VII
**Injunctive Relief**

58. Plaintiffs sue Defendant in equity for temporary and permanent injunctive relief.

59. Plaintiffs reallege, incorporate, and assert by reference the allegations set forth above as though fully stated herein.

60. The affidavits attached as Composite Exhibit "A" verify the facts in this application for a temporary injunction and permanent injunction.

61. Plaintiffs are entitled to the entry of a temporary injunction because: (1) Plaintiffs have a clear legal right to the requested relief; (2) Plaintiffs will suffer irreparable harm if the Court refuses to grant the injunction; (3) Plaintiffs do not have available another adequate remedy at law; and (4) a public interest will be served by the imposition of the injunction.

62. Defendant misappropriated and converted Plaintiffs' trade secrets and confidential information and has engaged in a campaign to defame Plaintiffs and tortiously interfere with their contracts and business relationships. This has caused damages to Plaintiffs' goodwill and other irreparable damages that cannot be measured by a pecuniary standard. The only effective remedy is to restrain Defendant from further wrongful conduct and preserve the status quo.

63. Accordingly, Plaintiffs respectfully request the Court grant a temporary injunction and, ultimately, a permanent injunction enjoining Defendant and anyone acting in concert with him, as follows:

(a) from directly or indirectly using, disclosing, copying, transferring, revealing, publishing, or otherwise making available to others, any Confidential Information belonging to Plaintiffs;

> for purposes of the injunction, "Confidential Information" is defined as any of Plaintiffs' proprietary information relating to such matters as operations, tools and equipment, services, clients,

> customers, referrals, vendors, suppliers, accounts, pricing, financial information, technical data, client or customer requirements, marketing techniques, potential customer lists, personnel, internal organization, business valuations, business plans, investments, financial information, intellectual property, trade secrets, protocols, technical data, products, processes, research, product plans, software, formulas, markets, software, developments, inventions, technology, designs, drawings, engineering, hardware configuration information, marketing, and other confidential information and compilations of information, records, and specifications.

(b) from directly or indirectly altering, modifying, tampering with, removing, deleting, or destroying any Confidential Information that is now or was in Defendant's possession, custody, or control, including information stored on any computer or other electronic or digital storage device or on any cloud application or web-based file repository;

(c) to return to Plaintiffs all lists, data, documents, files, and other records and tangible and intangible property of Plaintiffs, including but not limited to Confidential Information, that are now or were in Defendant's possession, custody, or control;

(d) from making any negative or disparaging statements about Plaintiffs; and

(e) from contacting any of Plaintiffs' clients, potential clients, or referral sources.

Respectfully submitted this 13th day of November 2018.

*/s/ Tucker Byrd*
Tucker Byrd
Florida Bar No. 381632
tbyrd@byrdcampbell.com
Juan Carlos Real
Florida Bar No. 012869
creal@byrdcampbell.com
**BYRD CAMPBELL, P.A.**
180 N. Park Ave. Ste. 2A
Winter Park, Florida 32789
407-392-2285 (Phone)

*ATTORNEYS FOR MACROTREND CAPITAL GROUP INC.; INNOVITAE HOLDINGS INC.; KEVIN GLUCKSTAL; GREGORY LUSTIG; and RICK JORDAN*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2018, a copy of the foregoing was filed using the CM/ECF System, which will serve a copy by email on all counsel of record.

*s/ Tucker H. Byrd*
**Tucker H. Byrd**
Florida Bar No. 381632